IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY | § | |
| INSURANCE COMPANY, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-05628 |
| | § | |
| WENYANG CHEN, | § | |
| *Defendant.* | § | |

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S
ANSWER TO DEFENDANT WENYANG CHEN'S
ORIGINAL COUNTERCLAIMS**

TO THE HONORABLE U.S. DISTRICT JUDGE CHARLES ESKRIDGE:

Plaintiff/Counter-Defendant Atlantic Casualty Insurance Company (Atlantic Casualty) files this answer to Defendant Wenyang Chen's original counterclaims (ECF 15). Atlantic Casualty respectfully shows the Court the following:

**I.**

**ATLANTIC CASUALTY'S ANSWER**

For each paragraph below, Atlantic Casualty restates Chen's allegations and responds accordingly.

**Counterclaims**

1.    "Counterclaim Plaintiff Wenyang ("Wayne") Chen (hereinafter "Chen") is a resident of Texas, and the owner of the Property at 133 FM 359 Road, Richmond, Texas 77406."

*Answer: Atlantic Casualty admits Chen is a Texas resident. Chen purports to own the Property located at 133 FM 359 Road, Richmond, Texas 77406.*

2.     "Counterclaim Defendant Atlantic Casualty Insurance Company (hereinafter "ACIC") is, as it alleges in this matter, a North Carolina corporation with its principal place of business in Goldsboro, North Carolina."

*Answer: Atlantic Casualty admits it is a North Carolina corporation with its principal place of business in Goldsboro, North Carolina.*

3.     "Chen and ACIC are citizens of different states for the purposes of diversity jurisdiction and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(1). Subject matter jurisdiction would also exist under 28 U.S.C. § 1367 over these counterclaims, as they arise out of the same series of events as give rise to Plaintiff's claims. This court has personal jurisdiction over ACIC because they have availed themselves of the jurisdiction and laws of the state of Texas, including appearing in this matter as Plaintiff."

*Answer: Atlantic Casualty admits the allegations of this paragraph.*

4.     "Venue is proper in that these counterclaims are brought in the case initiated by ACIC in this venue."

*Answer: Atlantic Casualty admits the allegations of this paragraph.*

5.     "In or about November 2019, ACIC, through one or more agents of ACIC, including Lucy Zhao, proposed to Chen to place insurance covering the Property. The package quote for insurance represented the insurance as $1.2 million in coverage on the Property."

*Answer: Atlantic Casualty admits that in or about November 2019 the managing general agent, Scottish American Insurance General Agency, Inc. now known as Novatae Risk Group, LLC, received a commercial insurance application Accord Form from Chen's agent Lucy Zhao. The November 20, 2019, package quote represented a building limit of $1.2 million for Property coverage. Atlantic Casualty denies all remaining allegations.*

6. "The proposal clearly identified the business description to which the property was being put as "LRO – office & warehouse for electronic lock distributor.""

*Answer: Atlantic Casualty admits the November 20, 2019 package quote classified exposure for general liability as lessors' risk only. Atlantic Casualty denies all remaining allegations.*

7. "The quote purported to be subject to a "Signed Acord Apps," a "Completed, signed/dated Terrorism form," and a "Signed No Loss Letter." The quote also recited "To bind coverage we must receive written confirmation of the order of coverage, based on the terms and conditions outlined within this quotation.""

*Answer: Atlantic Casualty admits the November 20, 2019 package quote was subject to "Signed Acord Apps Completed, signed/dated Terrorism Form [and] Signed No Loss Letter." The November 20, 2019 package quote also required written confirmation of the order of coverage, based on the terms and conditions outlined within the package quote.*

8. "There were no other subjectivities or conditions for coverage on the terms proposed. There were no subjectivities in the quote purporting to require an inspection, or making coverage contingent on an inspection or the results of an inspection."

*Answer: Atlantic Casualty denies that the package quote was issued without terms or conditions. The package quote constituted a preliminary, non-binding indication of potential terms and did not create coverage. On or about December 10, 2019, Chen's agent bound coverage with Scottish American Insurance General Agency, Inc., now known as Novatae Risk Group, LLC, which required "a signed No Known Loss Letter for the past 3 years," "signed bind request," and "favorable inspection" which was noted to be ordered by Scottish American Insurance General Agency Inc., now known as Novatae Risk Group, LLC.*

9.   "The proposal for insurance offered by ACIC both expressly stated and fairly implied that upon completion of the required subjectivities, and payment of the premium, the Property would be insured for $1.2 million."

*Answer: Denied. Atlantic Casualty denies that the Insurance Binder dated December 10, 2019 expressly or impliedly stated that upon completion of the required "subjectivities", and payment of the premium the Property would be insured for $1.2 million. Atlantic Casualty admits that the binder expressly states that it "may be cancelled by the Company by notice to the insured in accordance with the policy" and that the "binder is per the premium basis shown on your application however, it may reflect reduced coverage/limits from your application."*

10.   "All subjectivities for coverage were completed and the policy was issued in December 2019 as proposed, undifferentiated by any building(s) and in a full amount of $1.2 million in limits."

*Answer:   Atlantic Casualty admits Policy number M318000255-0 with effective dates of December 10, 2019 to December 10, 2020 was issued and provided coverage for one building*

*carrying a limit of insurance of $1.2 million. Atlantic Casualty denies all remaining allegations in this paragraph.*

11.   "In a letter dated October 16, 2025, ACIC counsel in this matter confirmed that the policy issued by ACIC in December 2019 included $1.2 million in insurance, undifferentiated by any building(s)."

*Answer: Atlantic Casualty admits counsel confirmed Policy number M318000255-0 with effective dates of December 10, 2019 to December 10, 2020 provided coverage for one building carrying a limit of insurance of $1.2 million.*

12.   "In January 2020, one or more representatives of ACIC conducted an inspection of the Property."

*Answer: Atlantic Casualty admits the managing general agent, Scottish American Insurance General Agency, Inc. now known as Novatae Risk Group, LLC retained Associated Services Inspections, Ltd. to conduct an inspection in January of 2020 of Chen's property as part of its underwriting process.*

13.   "Chen was not notified of the results of the inspection, and was not provided a copy of the inspection report."

*Answer: Atlantic Casualty denies the allegations of paragraph 13.*

14.   "Neither ACIC, nor anyone on its behalf notified Chen that any action or determination was or would be made on the basis of the inspection."

*Answer: Atlantic Casualty denies the allegations of paragraph 14.*

15. "At no time prior to the fire loss giving rise to this case did ACIC or anyone purporting to act on its behalf inform Chen (a) as to the results of the inspection; (b) that the results had supposedly indicated an insured value of less than $1.2 million, or (c) that either ACIC or anyone else had used the results to change to terms of any property coverage."

*Answer: Atlantic Casualty denies the allegations of paragraph 15.*

16. For the past several years, including the policy year at issue in this matter, Chen has renewed the insurance first purchased in 2019. The relevant renewals occurred in or about November 2020, November 2021, November 2022, November 2023, and November 2024."

*Answer: Atlantic Casualty denies the allegations of paragraph 16.*

17. "At no time in any renewal has the written renewal material conspicuously indicated, or indicated in a manner that drew Chen's attention to it, an effort by ACIC to reduce the coverage of the Property, or change the conditions of coverage."

*Answer: Atlantic Casualty denies the allegations of paragraph 17.*

18. "Moreover, based on ACIC's claim now, that the insurance limits are split between two buildings and that there is no overall $1.2 million limit in the policy, both the original quote and each years' renewal – each lacking of conspicuous clear indication claiming the policy limits had been reduced or the conditions of coverage changed – were misleading and misstate the advantages promised by the policy."

*Answer: Atlantic Casualty denies the allegations of paragraph 18.*

19. "In addition, in failing to conspicuously and clearly indicate that there were supposedly reductions in limits, that the limit had been reduced and split between two buildings, and that there was not still an overall limit of $1.2 million, ACIC failed to state material facts necessary to make any other representation in the renewal materials each year as to the limits or buildings not misleading."

*Answer: Atlantic Casualty denies the allegations of paragraph 19.*

20. "Simply put, ACIC, through one or more agents, engaged in a scheme to originally place $1.2 million in coverage for the Property, and then, without telling Chen, used a woefully inadequate "inspection" to purportedly reduce coverage of the Property to a total of about $700,000, or only about 58% of its value, without reasonably disclosing these facts to Chen in a non-misleading and conspicuous manner."

*Answer: Atlantic Casualty denies the allegations of paragraph 20.*

21. Worse still, ACIC, through one or more agents, engaged in a scheme to split the Property in two, such that depending on the locale and extent of the loss, even those inadequate $700,000 limits (much less an overall $1.2 million limit) would not be available to Chen, without reasonably disclosing these facts to Chen in a non-misleading and conspicuous manner."

*Answer: Atlantic Casualty denies the allegations of paragraph 21.*

22. "Then, contrary to Texas law, Insurance Code §551.056, and in a misleading manner, each year ACIC hid the now-claimed coverage changes in the "fine" print of renewals, such that Chen was misled as to the coverage purchased and maintained."

*Answer: Atlantic Casualty denies the allegations of paragraph 22.*

23.  "ACIC, and/or agents acting on its behalf, caused Chen to purchase insurance believing that he was purchasing insurance fairly covering the value of the Property, while in fact, ACIC claims to have covered at best only about 58% of the value Chen insured and intended to insure."

*Answer: Atlantic Casualty denies the allegations in paragraph 23.*

24.  "Upon information and belief, ACIC knew the inspection had occurred, and knew of the results of that inspection, and deliberately purported to reduce the limits of the policy without itself communicating, or instructing or ensuring any other agent communicated as required by law. Accordingly, ACIC knowingly committed the acts complained of above."

*Answer: Atlantic Casualty denies the allegations in paragraph 24.*

25.  "In April 2025, Chen suffered a fire loss at the Property."

*Answer: Atlantic Casualty admits the Property located at 133 FM 359 Rd, Richmond, Texas 77406 suffered a fire loss on or about April 27, 2025.*

26.  "The fire loss caused damage to the Property well in excess of the amounts paid to date, and believed to be in excess of $1.2 million."

*Answer: Atlantic Casualty denies the allegations in paragraph 26.*

27.  "ACIC purports to have paid $270,000 for fire loss to that portion of the Property then-used to warehouse inventory. Even just repairing and/or rebuilding that portion of the building will cost more than $270,000."

*Answer: Atlantic Casualty admits it exhausted its limits for Premises 1 Building 2 in the amount of $270,000. Atlantic Casualty denies the remaining allegations in paragraph 27.*

28. "ACIC purports to have paid $76,947.35 for fire loss damage to that portion of the Property used as offices. Even simply just repairing and/or rebuilding that portion of the building will cost more than the $76,947.35 paid. Even under ACIC's theory of the case, there remains more than $350,000 in available limits that ACIC has refused to pay."

*Answer: Atlantic Casualty admits it issued payment for Premises 1 Building 1 in the amount of $76,947.35. Atlantic Casualty admits there is more than $350,000 in available limits. Atlantic Casualty denies the remaining allegations in paragraph 28.*

29. "The amount ACIC has paid to date is not all that is owed by ACIC, or the limit of the policy, property construed."

*Answer: Atlantic Casualty admits that the amount paid to date is not the complete combined building limits of $700,000 under Policy M318002377-0. Atlantic Casualty denies all remaining allegations in paragraph 29.*

30. "ACIC has refused to pay any additional amounts, and instead brought this declaratory judgment action."

*Answer: Atlantic Casualty admits that it has refused to pay additional amounts beyond the combined building limits of $700,000 under Policy M318002377-0. Atlantic Casualty admits it brought this declaratory judgment action.*

31. "ACIC's actions in failing to pay amounts owed, including under the excuse of the improper and misleading actions above, have further caused Chen damage in the delay in

the repair and/or replacement of the fire loss, and restoration of the building to its prior income producing purposes."

*Answer: Atlantic Casualty denies the allegation in paragraph 31.*

### Count 1- Breach of Contract

32. "Chen incorporates all preceding allegations."

*Answer: This paragraph does not contain an allegation which must be admitted, denied, or otherwise responded to.*

33. "Chen suffered a fire loss at the Property, a loss that ACIC acknowledges, in this matter, is a covered loss."

*Answer: Atlantic Casualty admits the Property located at 133 FM 359 Rd, Richmond, Texas 77406 suffered a fire loss on or about April 27, 2025. Atlantic Casualty admits that damage arising from the fire loss is covered but denies the remaining allegations in paragraph 33.*

34. "The fire loss at the Property exceeds the amounts paid by ACIC to date, and exceeds $1.2 million."

*Answer: Atlantic Casualty denies the allegations in paragraph 34.*

35. "The applicable policy, properly read and applying Texas law, Insurance Code §551.056 must be read to include a limit of $1.2 million, not the $700,000 limit, or the two buildings limits claimed by ACIC."

*Answer: Atlantic Casualty denies the allegations in paragraph 35.*

36. "With or without the above application of Texas law, ACIC has not paid its obligations, and refuses to do so."

*Answer: Atlantic Casualty denies the allegations in paragraph 36.*

37. "ACIC is in breach of contract, and its breach has caused Chen damage, in an amount to be proven at trial, at least the difference between in the amount paid to date and the limits of the policy, that is $853,052.65."

*Answer: Atlantic Casualty denies the allegations in paragraph 37.*

**Count 2- Action Pursuant to Tex. Ins. Code §541.151**

38. "Chen incorporates all proceeding paragraphs."

*Answer: This paragraph does not contain an allegation which must be admitted, denied, or otherwise responded to.*

39. "Texas Insurance Code § 541.061 prohibits unfair or deceptive acts or practices by, among other things,

a) "failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;"

b) "making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;" and

c) "failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code."

*Answer: Atlantic Casualty denies the allegations in paragraph 39(a)-(c) to the extent directed at Atlantic Casualty in this dispute. The insurance code as written speaks for itself.*

40. "ACIC's actions as detailed above breached these provisions of the Texas Insurance Code, including but not limited to by failing to conspicuously inform Chen that ACIC was reducing coverage or changing the conditions of coverage in violation of §551.056, and also by failing to disclose the lack of an overall limit of $1.2 million in a manner that was not misleading."

*Answer: Atlantic Casualty denies the allegations in paragraph 40.*

41. "Due to the violations above, Chen relied on the belief that there was in fact $1.2 million in coverage on the Property in purchasing the maintaining the insurance through each renewal with ACIC, including the renewal giving rise to the insurance subject to this claim."

*Answer: Atlantic Casualty denies the allegations in paragraph 41.*

42. "Chen has suffered actual damages caused by these violations, including damages resulting from ACIC's refusal to timely pay the fire loss."

*Answer: Atlantic Casualty denies the allegations in paragraph 42.*

43. "Texas Insurance Code §541.151 authorizes and entitles a private right of action by Chen "against another person," in this case ACIC, for those damages caused by ACIC's violations."

*Answer: This paragraph contains allegations that are legal conclusion to which no response is required. Atlantic Casualty denies all remaining allegations in paragraph 43.*

44. "Accordingly, Chen brings an action against ACIC for the damages caused by ACIC's violations of Texas Insurance Code § 541.061, in an amount to be proven at trial, at least the difference between in the amount paid to date and the limits of the policy, that is $853,052.65."

*Answer: Atlantic Casualty admits Chen brings an action against Atlantic Casualty for damages for alleged violation of Texas Insurance Code § 541.061. Atlantic Casualty denies the remaining allegations in paragraph 44.*

45. "Pursuant to Texas Insurance Code §541.152, Chen is also entitled to court costs and reasonable attorney's fees, an award up to three times the amount of Chen's damages, and such other relief as the Court determines is proper."

*Answer: Atlantic Casualty denies the allegations in paragraph 45.*

### Count III- Action Pursuant to Tex. Bus. & Comm. Code §17.50

46. "Chen incorporates all preceding paragraphs."

*Answer: This paragraph does not contain an allegation which must be admitted, denied, or otherwise responded to.*

47. "Texas Business and Commerce Code § 17.46 prohibits unfair and deceptive acts or practices by, among other things,

a) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…"; or

b) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve."

*Answer: This paragraph contains allegations that are legal conclusion to which no response is required. Atlantic Casualty denies all remaining allegations in paragraph 47.*

48. ACIC's actions as detailed above breached the provisions of §17.46, including but not limited to by failing to conspicuously inform Chen that ACIC was reducing coverage or changing the conditions of coverage, and also by failing to disclose the now-alleged lack of an overall limit of $1.2 million in a manner that was not misleading."

*Answer: Atlantic Casualty denies the allegations in paragraph 48.*

49. "Due to the violations above, Chen relied on the belief that there was in fact $1.2 million in coverage on the Property in purchasing and maintaining the insurance through each renewal with ACIC, including the renewal giving rise to the insurance subject to this claim."

*Answer: Atlantic Casualty denies the allegations in paragraph 49.*

50. "Chen has suffered actual damages caused by these violations, including damages resulting from ACIC's refusal to timely pay the fire loss, as well as mental anguish."

*Answer: Atlantic Casualty denies the allegations in paragraph 50.*

51. "Chen is a consumer within the meaning of §17.50. Texas Business and Commerce Code §17.50 authorizes and entitles a private right of action by ACIC [sic] for those damages caused by ACIC's violations of the above alleged provisions and any other applicable under §17.46, as well as based upon the prior alleged violations of the Texas Insurance Code Chapter 541."

*Answer: Atlantic Casualty denies the allegations in paragraph 51.*

52. "Chen is entitled to damages, including mental anguish, and including three times the amount of damages found, in an amount to be proven at trial, as well as attorney fees and court costs."

*Answer: Atlantic Casualty denies the allegations in paragraph 52.*

"WHEREFORE, Defendant respectfully requests that this Court enter judgment in its favor on its Counterclaims against Plaintiff, and grant Defendant the following relief:

(A) Damages in the amount to be proven at trial, including

(i) Damages for fire loss,

(ii) Damages for delay in the payment of the claim,

(iii) Damages for mental anguish as found by the trier of fact,

(iv) Treble damages, and

(v) Attorney fees and costs, plus

(B) Such other relief as the Court determines proper."

*Atlantic Casualty denies the relief requested in this paragraph.*

*Any allegation that has not been admitted, denied, or explained in Atlantic Casualty's preceding answers is hereby denied.*

## II.
## ATLANTIC CASUALTY'S AFFIRMATIVE DEFENSES

In addition to its answers above, Atlantic Casualty asserts the following affirmative defenses. Atlantic Casualty reserves the right to plead additional affirmative defenses as

may be warranted. Any defense asserted below is pleaded in the alternative under the law, as necessary or appropriate. Under Federal Rule of Civil Procedure 10(c), Atlantic Casualty adopts by reference and fully incorporates for all purposes all coverage defenses asserted in its pleadings or motions.

1. Atlantic Casualty issued insurance policy no. M318001780-0, effective December 10, 2024 to December 10, 2025, to Wenyang Chen. (the Policy). (*See* ECF 1-1). Atlantic Casualty avers that the best evidence of the terms of the Policy are contained in the Policy and denies any allegations which may tend to enlarge, contradict or contravene the terms, conditions, exclusions, limitations of liability, as to the amount or otherwise, as therein provided. Atlantic Casualty specifically pleads the terms, conditions, provisions, exclusions, and limitations of the Policy as if copied herein in full and place Plaintiff on full proof of any allegations seeking to infer liability by virtue of the existence of said Policy of insurance.

2. *No independent injury.* Because Chen's allegations are generally based upon Atlantic Casualty's alleged failure to pay policy benefits and Chen has made no showing of an independent injury, the absence of liability for Chen's alleged underlying insurance claim precludes Chen's extra-contractual claims against Atlantic Casualty arising out of those allegations.

3. *Any direct physical loss has been satisfied.* Any obligation owed based on Chen's reported damage from a covered cause of loss has been fully satisfied; all other allegations of damage did not result from a covered cause of loss.

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

A.  Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

. . .

C.  Limits of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

. . .

E.  Loss Conditions

1.  Abandonment

There can be no abandonment of any property to us.

2.  Appraisal
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
a.  Pay its chosen appraiser; and
b.  Bear the other expenses of the appraisal and umpire equally.

3.  Duties In The Event Of Loss Or Damage

a.  You must see that the following are done in the event of loss or damage to Covered Property:

(1)  Notify the police if a law may have been broken.

(2)  Give us prompt notice of the loss or damage. Include a description of the property involved.

(3)  As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4)  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

CP 00 10 10 12


## CAUSES OF LOSS – SPECIAL FORM

A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

. . .

B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . .

a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

(1) Regulating the construction, use or repair of any property; or

(2) Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

(a) An ordinance or law this is enforced even if the property has not been damaged; or

(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

. . .

2.  We will not pay for loss or damage caused by or resulting from any of the following:

. . .

h.  Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

(1) Applies whether or not an act occurs during your normal hours of operation;

(2) Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

. . .

m.  Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

. . .

3.  We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

4.  *No assignment of benefits.* The Policy does not permit and voids any assignment of benefits by Plaintiff:

**ASSIGNMENT OF BENEFITS EXCLUSION**

No benefits under this policy may be assigned or otherwise transferred, regardless of whether made before loss or after loss, and any such assignment or transfer is void.

No causes of action arising from or based on this policy may be assigned, and any such assignment is void.

ACI-AOBE 12-17

5. The Policy contains a condition with regard to coverage in a case involving concealment, misrepresentation, or fraud:

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

CP 00 90 07 88

6. *Bona fide dispute.* Atlantic Casualty pleads that there is a bona fide dispute regarding liability on the contract and, therefore, there are no common-law or statutory bad-faith or other causes of action or claims.

7. *Valuation.* The Policy provides the basis for valuation of damage.

### 7. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, expect as provided in b., c., d. and e. below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

8.  *Coinsurance.* The Policy contains a coinsurance provision.

> 1.  Coinsurance
>
> If a Coinsurance percentage is shown in the Declarations, the following condition applies:
>
> a.  We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.
>
> Instead, we will determine the most we will pay using the following steps:
>
> (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;
>
> (2) Divide the Limit of Insurance of the property by the figure determined in Step (1);
>
> (3) Multiply the total amount of loss, before the application of any deductible by the figured determined in Step (2); and
>
> (4) Subtract the deductible from the figure determined in Step (3).
>
> We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.
>
> . . .

9.  The Policy excludes coverage for more than the actual amount of loss or damage.

> **C.  INSURANCE UNDER TWO OR MORE COVERAGES**
>
> If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of loss or damage.
>
> CP 00 90 07 88

10. *Material Misrepresentation.* If material misrepresentations were made in the procurement of the Policy, Atlantic Casualty gives notice and pleads that any material misrepresentation voids or limits coverage under the Texas Insurance Code provisions or common law governing misrepresentations in the insurance procurement or claim processes.

11. *Non-transference.* The Policy states that: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."

12. Chen's breach of contract claims are barred, in whole or in part, by the language of the Policy, including the terms, definitions, conditions, exclusions, endorsements, retentions, limits, and sub-limits contained within the Policy.

13. Chen cannot recover under a breach of contract claim because it cannot show that Atlantic Casualty breached any contract.

14. Chen cannot recover attorneys' fees under Chapter 38 of the Civil Practice and Remedies Code because Plaintiff cannot prove that Atlantic Casualty breached the parties' contract.

15. *Credit/offset.* Even if coverage is found, which is denied, Chen's recovery is limited to any amounts for which it is responsible and Atlantic Casualty is entitled to a credit/offset for all amounts already paid by any party or entity to Chen for the damages that are the subject of this lawsuit.

16. *No damages sustained.* Atlantic Casualty did not breach a contractual duty or obligation to Chen under the Policy, but even if it did, which is denied, any such breach did not proximately, legally, or foreseeably cause Chen to sustain any damages.

17. *Payment.* Atlantic Casualty pleads payment.

18. *Statute of Limitations.* Atlantic Casualty pleads the statute of limitations regarding the limits complaints. Chen's claims are time barred as a matter of law.

19. *Duty to Read the Policy.* Chen as insured had a duty to read his policy each year.

20. *Accord and satisfaction.* Atlantic Casualty would assert in the event it is found liable to Chen, any such liability being expressly denied, the affirmative defenses of accord and

satisfaction, release payment, credit, offset, res judicata, collateral estoppel, statute of limitations, waiver, and laches.

21. *Lack of insurable interest.* To the extent Chen either did not own the insured property or had no insurable interest in the insured property at the time of the claimed loss, there is no right to compensation regardless of the cause of loss.

22. *Statutory deadlines.* The statutory deadlines of the Texas Insurance Code Chapter 542 do not apply after litigation was filed.

23. *Failure to mitigate.* Chen is barred from recovery from Atlantic Casualty, in whole or in part, due to Chen's failure to mitigate the alleged damages and its contribution to its own alleged damages.

24. Any recovery by Chen for punitive damages against Atlantic Casualty would be subject to limitations on liabilities and damages contained in Chapter 41 of the Texas Civil Practice and Remedies Code, as well as all other statutory damage caps provided by law.

25. Chen failed to provide requested information and failed to satisfy proof of loss provisions in the Policy.

26. Atlantic Casualty reserves the right to assert other defenses as additional facts are revealed during discovery.

## V. Prayer

For these reasons, Atlantic Casualty prays that the Court dismiss Chen's counterclaim against Atlantic Casualty with prejudice. Atlantic Casualty further prays for judgment against defendant Wenyang Chen as follows:

a. Declaring that Atlantic Casualty's Policy limits of insurance for the fire for the two buildings is a combined total of $700,000—Premises 1 Building 1 carries a limit of insurance of $430,000 and Premises 1 Building 2 carries a limit of insurance of $270,000.

b. Declaring that Atlantic Casualty exhausted its limits for the fire for Premises 1 Building 2 in the amount of $270,000.

c. Alternatively, Atlantic Casualty seeks a declaration that Mr. Chen is not entitled to indemnification for the fire above the Policy's limits of insurance;

d. All rights or reimbursement at law or in equity;

e. Court costs; and

f. All other relief that the Court deems appropriate.

Respectfully submitted.

Camille Johnson
State Bar No. 10686600
S.D. Bar No. 16414
Sarah Sachs
State Bar No. 24127860
S.D. Bar No. 3918805
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.
4621 Ross Avenue, Suite 300
Dallas, Texas 75204
Phone: (214) 368-1515
Fax: (737) 273-8905
camille@ssjmlaw.com
ssachs@ssjmlaw.com

Erin Morris
State Bar No. 24127402
S.D. Bar No. 3815405
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.
885 Arapahoe Avenue, Suite 207
Boulder, Colorado 80302
Tel: (303) 244-9629
Fax: (737) 273-8905
erin@ssjmlaw.com
**Counsel for Plaintiff Atlantic Casualty Insurance Company**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing on April 13, 2026 with the Clerk of Court via the Court's CM/ECF System, which will send notification to all counsel of record.

Edward J. Loya, Jr.
Daniel Brown
DORSEY & WHITNEY LLP
200 Crescent Court, Suite 1600
Dallas, Texas 75201
**Counsel for Defendant Wenyang Chen**


_Sarah Sachs_

Sarah Sachs